IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

CHADWICK J. NEAL, )
 )
      Plaintiff, )
 )
vs. ) Case No. CIV-11-960-R
 )
JOE LESTER; RHETT )
BURNETT; CARRIE DAVIS, )
 )
      Defendants. )

## REPORT AND RECOMMENDATION

Plaintiff, an Oklahoma state prisoner proceeding pro se and in forma pauperis, seeks damages pursuant to 42 U.S.C. § 1983, alleging that Carrie Davis, then Senior Detention Sergeant at the Cleveland County Detention Center (CCDC), denied him a "medical O.R." in violation of the Eighth Amendment. Doc. 1, at 7.[1]

United States District Court Judge David L. Russell has referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B),(C). Defendant Davis seeks summary judgment and the matter is now at issue. *See* Docs. 65, 71, 72.

---

[1] This Court dismissed all claims against Defendants Joe Lester and Rhett Burnett. Doc. 56. This Court also dismissed all claims against Carrie Davis in her official capacity. *Id.* at 1-2.

I.  **Standard of review for summary judgment.**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court construes pro se filings liberally, holding them to a less stringent standard than a lawyer's formal pleadings, without "assum[ing] the role of advocate." *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008) (quotation omitted); *see Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Where, as here, the defendant raises "qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (citation omitted).

Ordinarily, "a verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e)." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) (citation and internal brackets omitted). However, "an unsworn complaint" is "insufficient to avoid summary judgment." *Serna v. Colo. Dep't of Corrs.*, 455 F.3d 1146, 1150-51 (10th Cir. 2006). Plaintiff did not verify his complaint or his objection to Defendant Davis' motion for summary judgment,

2

and the undersigned therefore treats neither document as an affidavit for summary judgment purposes. *See Uzochukwu v. Jones*, No. CIV-11-1512-HE, 2012 WL 6853505, at *2, *3 (W.D. Okla. Dec. 13, 2012) (unpublished recommendation) (finding that prisoner's unsworn complaint could not be treated as an affidavit and that "in the face of a summary judgment motion, his unsworn factual allegations are insufficient"), *adopted*, 2013 WL 147910 (W.D. Okla. Jan. 14, 2013) (unpublished order); *see* Doc. 1, at 5; Doc. 71, at 8-9.

## II.   Undisputed material facts.

Plaintiff was booked into CCDC on December 17, 2009, and on that date identified pre-existing "seizures eye" on his "event report." Doc. 65, Att. A, at Ex. 1, at 1. Plaintiff wore an eye patch over his left eye. *Id.* Att. A, at Ex. 1, at 2. He indicated on his inmate questionnaire that he sustained a left-eye injury while at the Washington County Jail on June 20, 2009, and suffered "loss of vision" and intense pain. Doc. 30, Ex. 9, at 2.

At 7:30 p.m. on December 17, Plaintiff filled out a request for medical treatment form. *Id.* Ex. 8, at 1. Plaintiff described his complaint as "[e]ye injury, loss of vision, intense pain." *Id.* As to his symptoms and when he first

3

noticed his condition, Plaintiff wrote: "Injury occurred 6/20/09. I have not seen a physician for [this injury.]" *Id.*[2]

On December 21, 2009, Plaintiff completed a second request for medical treatment, complaining of "[l]eft eye injury, no vision, & [illegible] pain." *Id.* at 2. Plaintiff was examined that day, and repeated his complaints of increasing pain and blurred vision. *Id*. Ex. 10, at 1. Plaintiff "state[d] that [his previous facility] had set him up an [appointment] at the Dean M[c]Gee Eye Institu[t]e before transfer here." *Id.* The nurse observed that no bleeding or redness were present, but did note "Strabismus" of the left eye. *Id.* Plaintiff was treated with "Tylenol 1000mg" and the nurse manager was notified of Plaintiff's status. *Id.*

The next day, on December 22, 2009, ARNP G. Clemens examined Plaintiff. *Id.* at 2. Plaintiff complained that his "eye [was] hurting, and

---

[2]  Written at the bottom of Plaintiff's request for medical treating is: "To See Glenda," and "[seen] by Erin R.N., 122109."  Doc. 30, Ex. 8, at 2. Attached to this form is an undated handwritten note stating:

<u>Eye Exam</u>

Extra ocular movements generally intact but left eye drifts to left and up during conversation. Red reflex present, retina appears intact but exam limited by dimness of otoscope light. Pupils equal and reactive. Conjunctive intact [with] no sign laceration, abrasion or tear. No fundal edema. [Initial]

*Id.* at 3.

bleeding at night." *Id*. The nurse noted "no signs of laceration, abrasion or tear," but acknowledged that the exam was "limited by dimness of otoscope light." *Id*. The nurse cautioned Plaintiff that his month-long use of an eye patch might be interfering with proper healing and he was advised to remove the patch. *Id*. Plaintiff's "Tylenol 1000mg Q4-6 hrs prn" regimen was continued, and a recheck appointment was set for the following Tuesday (December 29, 2009). *Id*.

On December 29, 2009, Plaintiff completed a request for medical treatment, complaining of "[b]lurred vision and continued pain." *Id*. Ex. 8, at 4. Though the description of his symptoms is partially illegible, Plaintiff states that his "pain is diminished some, but there is still occasional bleeding." *Id*. Different handwriting reads: "Stated Glenda told him she would follow up in a week. Glenda re-checked his eye." *Id*.

The next day, on December 30, 2009, Plaintiff submitted a request to staff to Defendant Davis, seeking "assist[ance] in obtaining medical care [for my eye injury] or obtaining an OR bond [in his underlying state case] to handle this matter." Doc. 65, Att. A, at Ex. 13. Section II of the form, where the Plaintiff described the problem, is largely unreadable. *Id*.; *see also* Doc. 1, Att. 1, at 6. Defendant Davis lacked the authority to "permit inmates to leave the CCDC on their own oral recognizance without a court order." Doc.

65, Att. A, at 9. Also, it was "the medical staff [that] was charged with determining whether an inmate needed to be seen by an outside medical facility." *Id*. Att. A, at 10. Accordingly, on December 31, 2009, Defendant Davis responded to Plaintiff that "I will not give you a medical OR. You need to fill out a medical slip to see the nurse for your injuries[.]" *Id*. Att. A, at 9; *id*. Att. A, at Ex. 13.

On January 5, 2010, Plaintiff underwent another examination. Doc. 30, Ex. 10, at 3. He complained of "more bleeding," but it was noted that "none has been observed or reported to medical," and the laundry had not received any blood-stained items. *Id*. The nurse practitioner told Plaintiff his eye "seem[ed] to be greatly improved and is getting better." *Id*. At Plaintiff's continued insistence that "he needs to go to the Dean Mc[G]ee Eye Institute to get his eye checked," the nurse indicated that she "would try and get him an appointment" and noted: "[w]ill call and get [patient] an appointment asap." *Id*.

Treatment notes indicate that the nurse "spoke to Dean Mc[G]ee" on January 6, 2010, and was advised that they would be in touch, but that "it is approx[imately] 3-6 weeks before appointments" *Id*. at 4. The same treatment note shows that on January 11, 2010, "Inmate has been released." *Id*.

After his release from CCDC, Plaintiff was examined at the Drummond Eye Clinic, P.C. on January 20, 2010. Doc. 71, at 10. The physician recommended surgery "Pending Jail Release" and checked diagnosis codes for "Blurred Vision," "Eyeball Laceration Without Prolapse," "Orbital Fracture," "Retinal Detachment, NEW," "Trauma," and "Hyperopia." *Id.* at 11.

## III. Analysis.

### A. The law.

Through the Fourteenth Amendment's due process clause, pretrial detainees like Plaintiff receive the Eighth Amendment's protection against the denial of adequate medical attention. *See Martinez*, 563 F.3d at 1088 (citation omitted). At the time of Plaintiff's detention in 2009-2010, this right was clearly established. *See Estate of Booker v. Gomez*, 745 F.3d 405, 433 (10th Cir. 2014) ("[T]here is little doubt that deliberate indifference to an inmate's serious medical need violates a clearly established constitutional right. This principle also clearly applies to pretrial detainees through the due process clause of the Fourteenth Amendment.") (citations and internal brackets and quotation marks omitted).

Accordingly, the qualified immunity analysis hinges on whether Plaintiff carries his burden of showing that Defendant Davis violated a constitutional right.

The Eighth Amendment "imposes duties on [jail] officials who must provide humane conditions of confinement; [jail] officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates[.]'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). In *Farmer*, the Supreme Court held that a "prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id.* at 828.

Under this governing standard, "'[d]eliberate indifference' involves both an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). With respect to the objective component, the "prisoner must first produce objective evidence that the deprivation at issue was in fact 'sufficiently serious.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834). The subjective component requires "evidence of the prison official's culpable state of mind" and may be satisfied with proof that the official "[knew] of and disregard[ed] an excessive risk to inmate health or safety." *Id.* So, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the inference." *Id.* (quotation omitted). Here, because Defendant Davis was a non-medical official, Plaintiff may

establish the subjective element if he shows that she served as a "gate keeper" to medical care and intentionally or recklessly denied or delayed his access to medical care or intentionally interfered with his prescribed treatment. *See Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976); *see also Blackmon v. Sutton*, 734 F.3d 1237, 1245 (10th Cir. 2013) ("[T]he Supreme Court [has] stated that one way a prisoner may satisfy the subjective component of the deliberate indifference test is to show that a 'gate keeping' prison official 'denied or delayed him access to medical care' in conscious disregard of a substantial risk of serious harm.") (internal brackets omitted, citing *Estelle*, 429 U.S. at 104-105)).

### B. Application of the law.

The undersigned finds that Plaintiff has brought forward sufficient evidence to satisfy *Farmer's* objective element, i.e., that his eyeball laceration, orbital fracture, retinal detachment, hyperopia, and blurred vision – accompanied with a recommendation for surgery – was sufficiently serious. Doc. 71, at 10-11. However, the undersigned finds a lack of sufficient evidence that Defendant Davis intentionally denied him access to medical care or interfered with his medical treatment. Indeed, the undisputed facts establish that Plaintiff was *not* denied medical care and thus no Eighth Amendment violation occurred.

In his unsworn complaint, Plaintiff alleges that the CCDC nurse told him that his eye injury was "beyond [CCDC's] ability to treat," and that he informed Defendant Davis of this issue through a letter and a request to staff. Doc. 1, at 2, 7. Plaintiff specifically asked Defendant Davis to arrange an "OR Bond" in his Oklahoma state court criminal case so that he might obtain outside medical care. Doc. 65, Att. A, at Ex. 13. Defendant Davis instructed Plaintiff that she could not give him a "medical OR" and referred him to the CCDC medical staff. *Id.*

Whether Plaintiff communicated to Defendant Davis that the medical staff was allegedly unable to effectively treat him is unclear. Defendant Davis avers that she does not recall receiving or reviewing the letter, *Id.* Att. A, at 9, and the request to staff is largely illegible. *Id.* Att. A, at Ex. 13. Nevertheless, even assuming that Defendant Davis became aware, even by second-hand, that Plaintiff needed outside medical care, no reasonable factfinder could conclude that she interfered with or delayed such treatment.

For example, the undisputed evidence shows that Defendant Davis had no power to grant Plaintiff a "medical OR" in his criminal case without a court order. *Id.* Att. A, at 9. Further, Defendant Davis had no authority to make medical decisions for Plaintiff; instead, the medical staff determined "whether an inmate needed to be seen by an outside medical facility." *Id.* Att.

10

A, at 9-10. So, when Defendant Davis referred Plaintiff back to the CCDC medical department, she was not *interfering with or delaying* Plaintiff's access to outside medical care. Instead, she was affording Plaintiff his only opportunity to get such care. The fact that the nurse practitioner began attempting to make Plaintiff an outside appointment *after he returned* for further medical treatment supports this finding. Doc. 30, Ex. 10, at 3. In light of this undisputed evidence, the undersigned finds that Plaintiff has not met his burden of establishing that Defendant Davis knew of but *disregarded* an excessive risk to Plaintiff's serious medical needs.[3] *Cox*, 2013 WL 6002225, at *14 (granting defendant summary judgment on Eighth Amendment claim in part based on evidence that defendant did not "have a role in deciding the medical care of Plaintiff").

Additionally, the undisputed evidence clearly shows that during his short confinement at CCDC, Plaintiff consistently received medical care and medical staff actively attempted to make him an appointment for outside

---

[3] Plaintiff argues in part that Defendant Davis could have at least "follow[ed] up with the jail[']s medical facility to insure that proper medical care had been rendered to the Plaintiff . . . ." Doc. 71, at 3. But this argument does not support a finding that Defendant Davis was deliberately indifferent to Plaintiff's serious medical needs. *See Cox v. Koch*, No. 11-CV-0771-CVE-TLW, 2013 WL 6002225, at *14 (N.D. Okla. Nov. 13, 2013) (unpublished order) ("The implication by Plaintiff that [the jail administrator] should have sought medical care for Plaintiff upon receipt of the letters [complaining about the lack of medical care] is insufficient evidence to survive summary judgment.").

care. Indeed, Plaintiff filed three requests for medical care in the relevant time frame, Doc. 30, Ex. 8, at 1-4, and was examined three times. *Id.* Ex. 10, at 1-3. Plaintiff was consistently treated for pain and advised not to wear his eye patch. *See id.* And, less than two weeks after his arrival and first examination, the nurse practitioner called to schedule Plaintiff an appointment at the Dean McGee Eye Institute. *Id.* at 4. These undisputed facts establish that Plaintiff was *not* denied medical care in violation of his Eighth Amendment rights. So, no reasonable factfinder could conclude that Defendant Davis' action interfered with, delayed or hindered Plaintiff's medical treatment. *See, e.g., Graham v. Van Der Veur*, 986 F.2d 1427, 1992 WL 401584, at *4 (10th Cir. Dec. 22, 1992) (unpublished op.) (affirming summary judgment on plaintiff's Eighth Amendment claim against non-medical prison officials for their alleged failure "to procure medical treatment for him" in part because plaintiff had "no arguable legal or factual basis" for the underlying lack-of-treatment claim); *Fresquez v. Baldwin*, No. 08-cv-01233-CMA-CBS, 2010 WL 5934891, at *8 (D. Colo. Dec. 15, 2010) (unpublished recommendation) (recommending granting defendant's motion for summary judgment because in light of the undisputed evidence that plaintiff had received consistent medical care, there was "no evidence from which to infer that [the non-medical prison deputy] intentionally denied or

12

delayed Plaintiff's access to medical treatment or intentionally interfered with any treatment that had been prescribed"), *adopted*, 2011 WL 830082 (D. Colo. Mar. 4, 2011) (unpublished order), *appeal dismissed*, *Fresquez v. Jefferson Cnty.*, 469 F. App'x 703 (10th Cir. 2012).

Based on the foregoing, the undersigned finds that Plaintiff has failed to satisfy his burden of showing that Defendant Davis was deliberately indifferent to his serious medical needs.

### IV. Recommendation and notice of right to object.

For the reasons stated, the undersigned Magistrate Judge recommends that this Court grant Defendant Davis' motion for summary judgment.

The undersigned advises the parties of their right to object to this Report and Recommendation by the 2nd day of July, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The undersigned further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues referred to the Magistrate Judge in this matter.

SO ORDERED this 12th day of June, 2014.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE